**John L. MARKS, Plaintiff-Appellant,**

**v.**

**PANNELL KERR FORSTER and John P. Jaeger, Defendants-Appellees.**

**No. 86–1609.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 15, 1986.

Decided Feb. 9, 1987.

Rehearing and Rehearing En Banc Denied March 13, 1987.

William I. Goldberg, Holleb & Coff, Chicago, Ill., for plaintiff-appellant.

Howard D. Lieberman, Neal, Gerber & Eisenberg, Chicago, Ill., for defendants-appellees.

Before CUMMINGS, Chief Judge, and CUDAHY, Circuit Judge, and CAMPBELL, Senior District Judge.*

WILLIAM J. CAMPBELL, Senior District Judge.

Plaintiff-appellant John L. Marks appeals the district court's dismissal of his action brought under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.* For the reasons set forth below, we affirm the dismissal.

The facts in this case, as advanced by appellant and therefore viewed in a light most favorable to appellant are as follows. Defendants-appellees Pannell Kerr Forster and John P. Jaeger (Pannell/Jaeger) were hired as certified public accountants to han-

dle partnership arrangements principally owned and controlled by Anthony Antoniou. Appellant Marks alleges he acquired interests in 21 of these partnerships between 1974 and 1983. It was customary that during this time period Pannell/Jaeger would view the partnerships' financial records and release to all partners involved K–1 tax schedules indicating the interest each partner had in the various partnerships.

According to Marks, on January 15, 1984 Antoniou notified him by letter that he no longer had any interests in the Antoniou partnerships. However, Marks alleges he has substantial interests in 21 partnership arrangements with Antoniou, the value of which exceeds $8,000,000. Marks claims that when he requested explanatory information from Antoniou as to how he could suddenly have no interests in the partnerships the request was turned down. On August 2, 1985 Marks filed suit in the Circuit Court of Cook County against Antoniou. Subsequently, defendants Pannell/Jaeger mailed four allegedly false K–1 tax schedules to Marks indicating a termination of Marks' interests in the partnerships. Marks demanded corrected returns in an August 7 letter. The requests were denied by Pannell/Jaeger's attorney, who also advised Marks to cease communicating with his client. Thereafter, the 17 remaining K–1's were sent to Marks, indicating the capital in his account was at zero. Marks alleges the result was an Antoniou-Pannell/Jaeger conspiracy which diverted the capital he had invested into the partnerships to Antoniou and the other partners.

Furthermore, on October 4 of 1985, Marks alleges Pannell/Jaeger told his personal accountant all partnership tax returns would be unavailable to Marks. Marks claims the result of this was that he could not accurately compute his income for 1984. Finally, as further evidence that Pannell/Jaeger conspired with Antoniou to perpetuate an ongoing scheme to defraud

* The Honorable William J. Campbell, Senior District Judge of the Northern District of Illinois, is sitting by designation.

him, Marks points to Pannell/Jaeger's filing of allegedly false IRS partnership tax returns which effectively deprived him of his $8,000,000 stake in the Antoniou partnerships.

This case represents a further post-*Sedima* opportunity [1] to articulate what constitutes a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961 *et seq.* In *Sedima,* the Supreme Court stated:

... the definition of a "pattern of racketeering activity" differs from the other provisions in § 1961 in that it states that a pattern *"requires* at least two acts of racketeering activity," § 1961(5) (emphasis added), not that it "means" two such acts.

The implication is that while two acts are necessary, they may not be sufficient.... The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern." S.Rep. No. 91–617, p. 158 (1969) (emphasis added). Similarly, the sponsor of the Senate bill, after quoting this portion of the Report, pointed out to his colleagues that "[t]he term 'pattern' itself requires the showing of a relationship.... So, therefore, proof of two acts of racketeering activity without more, does not establish a pattern...." 116 Cong.Rec. 18940 (1970) (statement of Sen. McClellan). See also *id.,* at 35193 (statement of Rep. Poff) (RICO "not aimed at the isolated offender"); House Hearings, at 665. Significantly, in defining "pattern" in a later provision of the same bill, Congress was more enlightening: "criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by dis-

tinguishing characteristics and are not isolated events." 18 U.S.C. § 3575(e). This language may be useful in interpreting other sections of the Act. Cf. *Iannelli v. United States,* 420 U.S. 770, 789, 95 S.Ct. 1284, 1295, 43 L.Ed.2d 616 (1975).

105 S.Ct. at 3285, n. 14.

Post-*Sedima* discussions by this Court pertaining to the meaning and scope of the RICO "pattern of racketeering activity" language found in § 1962 can be found in three cases: *Illinois Department of Revenue v. Phillips,* 771 F.2d 312 (7th Cir.1985); *Lipin Enterprises v. Lee,* 803 F.2d 322 (7th Cir.1986); and *Margaret Morgan and Burton Morgan v. Bank of Waukegan, et al.,* 804 F.2d 970 (7th Cir.1986). The *Lipin* case is the closest case on point to the instant case and we shall discuss and compare *Lipin* in order to show why affirmance of the district court's dismissal of Marks' complaint was appropriate. While centering our analysis on *Lipin,* we will also touch upon *Phillips* and *Morgan.*

In *Lipin,* plaintiff Lipin alleged he was fraudulently induced into purchasing a car leasing company by the defendant seller and sole shareholder of the company, a man named Lee. Lipin alleged Lee conspired with lawyers, accountants and banks to inaccurately portray the company at an inflated value. Indeed, in order to accomplish the sale, the district court specifically ruled misrepresentations were advanced which it found constituted 12 separate acts of mail fraud. Included as misrepresentations were the overstatements of company net worth and the omission of lease agreements which committed the company's financial resources. Despite the finding of a dozen misrepresentations the district court granted defendant's 12(b)(6) motion to dismiss. We affirmed, ruling:

Lipin's complaint alleges racketeering acts all designed to defraud one victim, Lipin, on one occasion, the sale of Rifco. Lipin cannot allege that the defendants defrauded another victim with similar racketeering activity and cannot allege

---

**1.** See *Sedima, S.P.R.L. v. Imrex Company,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985).

that Lipin has been defrauded more than once by the defendants through similar racketeering acts.

Whatever more is required to allege a pattern of racketeering activity, that something more is lacking here. The pattern requirement was intended to limit RICO to those cases in which racketeering acts are committed in a manner characterizing the defendant as a person who regularly commits such crimes. RICO is not "aimed at the isolated offender." There must be some indication of a "threat of continuing activity" by the defendants, not just one instance of fraud with a single victim.

at 324–25 (citations omitted).

We believe we have a *Lipin* situation in the instant case. To paraphrase *Lipin*, the racketeering acts defraud one victim, Marks, on one occasion (prompted by the January 15, 1984 letter by Antoniou). Pannell/Jaeger's racketeering activity as alleged by Marks was to mail allegedly false K–1 tax schedules to Marks on two occasions, file false partnership tax returns, and, through his attorney, deny Marks access to information or discussions with defendants. As in *Lipin*, Marks did not allege defendants defrauded other victims with similar racketeering activity and did not allege he has been defrauded more than once by the defendants through similar racketeering acts. As stated in the *Sedima* passage above, the target of RICO is not sporadic activity or the isolated offender. RICO was meant to address continuing activity. *Sedima's* continuity plus relationship, aspects necessary to produce a "pattern of racketeering activity," is missing in the instant case.

In *Morgan*, we expanded upon this concept:

In order to be sufficiently continuous to constitute a pattern of racketeering activity, the predicate acts must be ongoing over an identified period of time so that they can fairly be viewed as constituting separate transactions, i.e. "transactions 'somewhat separated in time and place.'" Relevant factors include the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries.

at 975–76 (citations omitted).

In referring to *Lipin*, the *Morgan* panel stated:

It is true that plaintiff was able to point to multiple predicate acts: a false statement made during negotiations for the sale, false financial statements, a false opinion letter from the attorneys, false financial statements, and a false statement that the financial statements were accurate. The existence of multiple predicate acts in *Lipin*, however, is only because the acquisition of stock in this context is a complicated transaction that requires many separate statements from a variety of persons: financial statements from the accountants, opinions from the lawyers, oral statements from the parties negotiating the sale, and so forth. All of these predicate acts still relate to but a single act: an acquisition of a large block of stock. The mere fact that the complexity of the transaction generates numerous pieces of paper and hence a greater number of possible fraudulent acts does not make these predicate acts ongoing over a period of time so as to constitute separate transactions that are distinct in time and place. Since these predicate acts were all made in a fairly short period of time (several months), and all clearly relate to the same transaction (the acquisition of a large block of stock), involve a single scheme and a single victim, and create a single injury, the acts in *Lipin* do not satisfy the continuity aspect of the pattern of racketeering activity.

*Id.* at 976–77.

*Morgan* was distinguishable from *Lipin* and the instant case in that plaintiff alleged acts of mail fraud extending over a several year period. The fraudulent acts also resulted in two separate and distinct foreclosure sales held two years apart. Hence, separate transactions were repeated over a

several year time period resulting in independent, fraudulently-created occurrences related in nature (the foreclosure sales). *Sedimas's* "continuity plus relationship" requirement was therefore deemed to have been satisfied and the RICO claim in *Morgan* was therefore allowed.

In contrast, the facts of the instant case seem more closely aligned with *Lipin* than *Morgan*. The multiple predicate acts by Pannell/Jaeger covered a short period of time (several months) and do not take on the character of being separate and distinct schemes in time and place. The acts alleged related to a single scheme to defraud a single victim in what appears to be a "one-shot" effort to inflict a single injury. Such a factual scenario simply fails to satisfy the continuity aspect of racketeering activity required by *Sedima*.

We note the *Phillips* case is distinguishable from *Lipin* and the instant case because of the presence of this continuity aspect or factor. In *Phillips,* defendant operated a retail business which sold gasoline at three locations in Chicago. For nine straight months defendant filed fraudulent sales tax returns to the Illinois Department of Revenue. Each return represented a separate fraud. The activity would have continued indefinitely until detected. In the instant case, the acts alleged, while multiple, represented the entire scheme, which necessarily would end after its single accomplishment. In *Phillips,* the acts alleged were part of a scheme indefinite in time and with ongoing "accomplishments" or results. The acts were continuous and related.

We conclude Marks has failed to allege a "pattern of racketeering activity" within the meaning of the RICO statute. Hence, there is no need to discuss whether Marks has adequately pled the other necessary elements of a RICO claim. As a matter of course, Counts II through IV of the complaint still lack a basis for federal jurisdiction. Therefore, the district court's dismissal of this law suit is

AFFIRMED.

CUDAHY, Circuit Judge, concurring:

The complaint in this case alleges that one victim was deprived of his partnership interests affecting his tax liability for a single year. These facts appear to involve a single *episode* of alleged wrongdoing, *see Graham v. Slaughter,* 624 F.Supp. 222, 225 (N.D.Ill.1985). The majority would apparently not require that there be multiple *schemes* in order to meet the pattern requirements of RICO, *cf. Northern Trust Bank/O'Hare, N.A. v. Inryco, Inc.,* 615 F.Supp. 828, 833 (N.D.Ill.1985). Distinctions of this sort may be metaphysical but nonetheless seem useful if we are to continue to attempt to limit civil RICO on the authority of footnote 14 of *Sedima, S.P. R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985). On the basis I have indicated I join in the majority's skillful resolution of the case.