**The DERSON GROUP, LTD. (formerly Right Associates of the Midwest, Inc.), Plaintiff and Counterdefendant,**

v.

**RIGHT MANAGEMENT CONSULTANTS, INC., Defendant, Counterplaintiff, and Third–Party Plaintiff,**

v.

**William P. SIDERIUS, Third–Party Defendant.**

No. 87 C 2421.

United States District Court, N.D. Illinois, E.D.

April 21, 1988.

---

Roger L. Taylor, Delilah Brummet, Miriam G. Bahcall, Kirkland & Ellis, Chicago, Ill., for plaintiff, counterdefendant, and third-party defendant.

Don R. Sampen, Michael P. Palmer, Jenner & Block, Chicago, Ill., James M. Smith, James T. Heidelbach, Gebhardt & Smith, Baltimore, Md., for defendant, counterplaintiff, and third-party plaintiff.

## ORDER

BUA, District Judge.

This case, which began as a simple dispute between business associates, has burgeoned into a complex action involving a variety of legal claims. Plaintiff's second amended complaint originally contained eight different counts, but plaintiff has voluntarily dismissed Count VII. Defendant's counterclaim and third-party complaint have raised eight additional claims. Defendant has moved to dismiss the remaining seven counts of plaintiff's complaint. Meanwhile, plaintiff and its president, a third-party defendant, have moved to dismiss Counts VII and VIII of defendant's counterclaim and third-party complaint. For the reasons stated herein, this court grants defendant's motion to dismiss with respect to Counts I, III, and VI, but denies the motion with respect to Counts II, IV, V, and VIII. In addition, plaintiff's and third-party defendant's motion to dismiss is granted.

## FACTS

Defendant Right Management Consultants, Inc., ("RMC") is a Pennsylvania corporation headquartered in Philadelphia. RMC provides its corporate clients with outplacement services, helping recently terminated employees to find new employment through general job counseling and assistance in resume preparation. RMC conducts its business under the name of "Right Associates," a name that RMC has registered as a service mark with both the federal government and the state of Illinois.

In 1981, RMC began to develop a nationwide network, affiliating itself with a number of independently owned and operated outplacement firms in various regions of the country. Plaintiff Right Associates of the Midwest, Inc. ("RAM"), an Illinois corporation formed in 1981, became one of RMC's first affiliates. In exchange for gaining access to RMC's nationwide network of referrals and contacts, RAM agreed to pay RMC a fee of 10 percent of its revenues from outplacement services.

For several years, RAM and RMC apparently maintained a stable and profitable business relationship. Unfortunately, after the two firms entered into a formal affiliate agreement in April 1986, their relationship began to disintegrate. Ultimately, disagreements over the agreement led to an irreparable rift between the parties. By letter dated March 11, 1987, RAM officially terminated its affiliation with RMC.

The causes underlying the dissolution of the RAM–RMC affiliation remain a mystery. In attempting to establish the blame for the breakup, each party has pointed an accusing finger at the other. RAM characterizes the April 1986 agreement as part of a larger scheme by RMC to seize control of RAM's business. RMC offers an alternative explanation of the affiliation's demise, asserting that RAM failed to make required payments under the affiliate agreement. The parties' conflicting theories form the basis for a variety of legal claims: RAM filed an eight-count complaint, and RMC submitted an eight-count counterclaim as well as a third-party complaint against RAM's President, William Siderius.

RMC moved to dismiss RAM's second amended complaint in its entirety. In addition, RAM and Siderius moved to dismiss Counts VII and VIII of RMC's counterclaim and third-party complaint. For nearly a year, this court refrained from ruling on these motions while the parties conducted settlement negotiations. In the course of those negotiations, RAM agreed to change its name to The Derson Group, Ltd.

("Derson").[1] Derson then voluntarily dismissed Count VII of its complaint, which sought cancellation of RMC's registration of the service mark "Right Associates." Despite reaching agreement on this issue, the parties failed to resolve any of their other differences. Now that settlement negotiations have reached an impasse, the time has come for this court to consider the parties' respective motions to dismiss.

## DISCUSSION

### I. *RMC's Motion to Dismiss Derson's Second Amended Complaint*

Following the dismissal of Count VII, Derson's second amended complaint presents seven different legal claims against RMC. Counts I, II, and IV concern various allegations of fraud. Count III alleges that RMC violated state law when it terminated Derson's franchise. Count V accuses RMC of tortious interference with contractual and business relationships. Count VI raises claims of libel, defamation, and slander. Finally, Count VIII charges that RMC breached the April 1986 affiliate agreement. RMC has moved to dismiss each of these counts.

#### A. Counts I, II, and IV—Fraud

Three of the counts in Derson's complaint allege that RMC committed fraud in order to induce Derson to enter into the April 1986 affiliate agreement. Count I claims that RMC misrepresented and omitted material facts in its offering circular and franchise disclosure statement, thereby violating section 8 of the Illinois Franchise Disclosure Act ("IFDA"), Ill.Rev.Stat. ch. 121½, para. 708 (1985). Count II asserts that RMC violated section 6 of the IFDA, Ill.Rev.Stat. ch. 121½, para. 706 (1985), by making misrepresentations in connection with its franchise offer to Derson. Based on these same alleged misrepresentations, Count IV raises a claim of common law fraud.

Under the liberalized pleading standards adopted by the modern Federal Rules of Civil Procedure, a "short and plain statement" will normally suffice to state a claim. Fed.R.Civ.P. 8(a). Whenever a plaintiff alleges fraud, however, the Federal Rules impose stricter pleading prerequisites. A complaint that raises a fraud claim, whether of the statutory or common law variety, must state "the circumstances constituting fraud ... with particularity." Fed.R.Civ.P. 9(b). To satisfy the particularity standard of Rule 9(b), a plaintiff pleading fraud must "specify the time, place and contents of any alleged false representations, and the full nature of the transaction." *McKee v. Pope Ballard Shepard & Fowle, Ltd.*, 604 F.Supp. 927, 930 (N.D.Ill.1985) (quoting *Lincoln Nat'l Bank v. Lampe*, 414 F.Supp. 1270, 1279 (N.D.Ill.1976)).

■ Count I of Derson's complaint fails to allege fraud with the particularity required by Rule 9(b). Derson contends that paragraph 66 of its complaint lays a foundation for Count I with sufficient particularity. Paragraph 66 states that RMC made misrepresentations regarding three general categories: RMC's affiliate network; the affiliates' impact on RMC's profitability; and RMC's relationship with its affiliates. Nowhere in the complaint, however, does Derson disclose the specific contents of any alleged misrepresentations made by RMC in its franchise disclosure statement. Without any specific reference to allegedly fraudulent statements or omissions, the first count of Derson's complaint lacks the particularity mandated by Rule 9. The litany of general categories contained in paragraph 66 does not remedy this deficiency. Derson's complaint fails to provide the detailed notice that RMC needs in order to fashion a responsive pleading to Count I. Therefore, this court grants RMC's motion to dismiss the first count of Derson's complaint.

■ Counts II and IV, however, display the sort of particularity that Count I lacks. Admittedly, that particularity is not immediately apparent; the complaint does an

---

**1.** In order to avoid confusion, the court will refer to the plaintiff as "Derson" for the remain-

der of this opinion.

excellent job of obscuring the specific factual basis for Counts II and IV. Whether by inartfulness or design, Derson has crafted a lengthy and confusing complaint, filled with overly generalized assertions of fraud that could not possibly survive a motion to dismiss. Nonetheless, buried amidst the host of deficient claims in Derson's complaint is a single allegation presented in sufficient detail to meet the particularity requirement of Rule 9(b). Specifically, Derson alleges in paragraph 44 that when the parties signed the affiliate agreement in April 1986, RMC promised Derson exclusive rights to the Wisconsin and Minnesota markets. The complaint describes this alleged misrepresentation with sufficient specificity to provide a particularized basis for both Counts II and IV.

Additionally, Count IV adequately asserts all five substantive elements of common law fraud:

(1) false statement of material fact (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance.

*Soules v. General Motors Corp.*, 79 Ill.2d 282, 286, 37 Ill.Dec. 597, 599, 402 N.E.2d 599, 601 (1980). According to Derson's complaint, RMC never intended to grant Derson exclusive rights in Wisconsin and Minnesota, but merely made this misrepresentation to induce Derson to sign the affiliate agreement. Furthermore, Derson asserts that it acted in reliance on this misrepresentation, not only signing the agreement, but also making plans to expand into Wisconsin and Minnesota. Finally, Derson alleges that it spent considerable time, money, and effort on these expansion plans. Derson's ultimately futile expenditures on an expansion that never took place supply a basis for a claim of damages in connection with Count IV.

Although Count II does not rest on a theory of common law fraud, a recent Seventh Circuit opinion suggests that Count II's allegation of fraud under section 6 of the IFDA must include the same elements required to state a claim of common law fraud. *See Proimos v. Fair Automotive Repair, Inc.*, 808 F.2d 1273, 1276 (7th Cir. 1987). Derson easily overcomes this obstacle, however. Count II arises from the same factual predicate as Count IV; therefore, like Count IV, Count II contains the five elements needed to plead common law fraud.

Unlike Count I, Counts II and IV plead fraud with the particularity required by Rule 9(b). Moreover, these two counts allege all of the requisite components of common law fraud. In light of these findings, it would be premature to dismiss Counts II and IV at this time.

### B. Count III—Improper Franchise Termination

In Count III, Derson charges RMC with violating section 4.3 of the IFDA, Ill.Rev. Stat. ch. 121½, para. 704.3 (1985). Under the terms of section 4.3, a franchisor cannot terminate a franchise agreement except for good cause. In addition, a franchisor must give a franchisee reasonable notice of any alleged breach of the agreement, allowing the franchisee an opportunity to cure any alleged default. Derson claims that RMC has not complied with these procedures.

Obviously, RMC could not have violated section 4.3 unless (as Derson alleges) RMC actually terminated the affiliate agreement. Subsequently submitted evidence, however, reveals that Derson—not RMC—severed the affiliate relationship. Although RMC sent notices of termination to Derson on February 9, 1987 and February 26, 1987, these notices did not effectuate the immediate dissolution of the RMC–Derson affiliation. In fact, the affiliate agreement remained in effect until its termination by Derson on March 11, 1987. Derson admitted as much in its submission of proposed findings of fact at an earlier stage of this litigation. Given the facts of the case, Derson cannot establish the most basic element of its section 4.3 claim— RMC's termination of the agreement. Consequently, the claim cannot stand. Treating RMC's motion to dismiss as a motion for summary judgment governed by Fed.R.

Civ.P. 56, this court dismisses Count III of Derson's complaint.

## C. Count V—Tortious Interference with Contractual and Business Relationships

■ Count V raises two different legal claims against RMC: tortious interference with contract and tortious interference with business relationships. The first of these claims cannot survive close scrutiny. To state a claim for tortious interference with contract, the complaint must allege that RMC's actions induced a third party to breach a contract with Derson. *See George A. Fuller Co. v. Chicago College of Osteopathic Medicine*, 719 F.2d 1326, 1331 (7th Cir.1983). Derson's complaint, however, never even alleges the existence of a third-party contract, let alone a breach.

■ Nonetheless, despite its deficiency in pleading tortious interference with contract, the complaint contains all the elements of the tort of interference with business relationships: "the existence of a valid business relationship ... or expectancy; knowledge of the relationship or expectancy on the part of the interferer; an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and resultant damage to the party whose relationship or expectancy has been disrupted." *City of Rock Falls v. Chicago Title & Trust Co.*, 13 Ill.App.3d 359, 363, 300 N.E.2d 331, 333 (1973). According to the complaint, Derson had developed profitable business relationships with a number of clients. Through its affiliation with Derson, RMC allegedly knew all about Derson's business dealings. The complaint further asserts that RMC sought to seize control of Derson's business by making misrepresentations to Derson's clients about Derson's competence and its status in the affiliate network. Allegedly, RMC even went so far as to provide services to Derson's clients without Derson's knowledge. The complaint ultimately claims that because of RMC's contacts with Derson's clients, Derson lost business and future profits. By pleading that RMC knowingly and intentionally interfered with Derson's business dealings, causing a disruption in those dealings and resultant monetary damages, Derson has adequately alleged a tortious interference with business relationships.

■ RMC contends that this court should dismiss Count V because Derson has not identified the third parties whom RMC allegedly contacted. This argument cannot prevail. Eventually, Derson will have to present more specific details in order to support its claim. At this stage of the litigation, however, Derson need only articulate the requisite elements of tortious interference in a "short and plain statement." Fed.R.Civ.P. 8(a). Because Derson has satisfied this rudimentary pleading requirement, this court denies RMC's motion to dismiss Count V.

## D. Count VI—Libel, Defamation, and Slander

■ Count VI alleges that RMC committed libel, defamation, and slander by making false statements about Derson's business practices. In support of this allegation, the complaint does not provide a single example of a specific false statement by RMC. Instead, Derson rests its claim on vague and general assertions. Derson contends that its generalized pleading of defamation satisfies the requirement of notice pleading under the Federal Rules. When previously faced with this issue, however, the federal courts have reached the opposite conclusion: "[U]nder general principles it is usually held that a defamation plaintiff does not satisfy the requirements of notice pleading unless he specifically alleges the words said to be actionable." *Herbert v. Lando*, 603 F.Supp. 983, 990 (S.D.N.Y.1985), *rev'd in part on other grounds*, 781 F.2d 298 (2d Cir.1986); *see also Asay v. Hallmark Cards, Inc.*, 594 F.2d 692, 699 (8th Cir. 1979) ("[T]he use of *in haec verba* pleadings on defamation charges is favored in the federal courts because generally knowledge of the exact language used is necessary to form responsive pleadings."). In the absence of any specific statements on which to base its defamation claim, Derson fails to meet the standard of notice plead-

ing. Consequently, this court grants RMC's motion to dismiss Count VI.

### E. Count VIII—Breach of the April 1986 Affiliate Agreement

█ Finally, Derson alleges in Count VIII of its complaint that RMC breached the April 1986 affiliate agreement. To state a claim for breach of contract, Count VIII must allege that a contract existed, that Derson performed its contractual obligations, that RMC breached the contract, and that Derson suffered damages due to the breach. *See Allstate Ins. Co. v. Winnebago County Fair Ass'n*, 131 Ill.App.3d 225, 233, 86 Ill.Dec. 233, 239, 475 N.E.2d 230, 236 (1985). Derson's complaint just barely satisfies these pleading requirements.

█ The breaches alleged by the complaint fall into three general categories: failure to abide by the agreement's termination procedures; failure to provide Derson with affiliate agreements for exclusive franchises promised to Derson; and failure to make payments owed to Derson. RMC contends that Derson has failed to allege damages stemming from any of these purported breaches. At first glance, RMC's contention appears to have merit. Certainly Derson cannot claim damages based on RMC's noncompliance with termination procedures; after all, Derson itself terminated the agreement. Moreover, in connection with the other alleged breaches, Derson never explicitly asserts damages. Nonetheless, the complaint alleges just enough to make out a claim for damages arising from RMC's breach of the affiliate agreement. For instance, Derson claims to have spent time and money on a planned expansion into Wisconsin and Minnesota. If Derson made these expenditures in reliance on RMC's promises, then RMC's failure to make arrangements for exclusive Derson franchises in Wisconsin and Minnesota could entitle Derson to recover damages.[2] In addition, the complaint alleges that RMC

failed to make payments owed to Derson under the agreement. Although Derson does not specify a precise amount, its allegation of delinquent payments necessarily entails a claim of money damages stemming from a breach of contract.

█ Of course, RMC would have no duty to make these allegedly delinquent payments unless Derson fulfilled its own contractual obligations. RMC contends that the complaint fails to allege Derson's performance of conditions precedent to the payments. This court disagrees. Once again, albeit obscurely, the complaint pleads barely enough to sustain Count VIII. While never citing to a particular service rendered by Derson that went uncompensated, the complaint does allege that Derson performed certain services for which it could reasonably expect payment. In paragraphs 23 through 26, the complaint generally asserts that Derson performed two tasks compensable under the affiliate agreement: finding new business and managing accounts for the RMC network. Conceivably, RMC may not have fully compensated Derson for these services. In light of this possibility, the complaint makes a minimally sufficient allegation that Derson has satisfied the conditions precedent to the payments it now seeks.

Much like Counts II, IV, and V, Count VIII has narrowly escaped extinction. Due to Derson's skeletal pleadings, the claims that have survived RMC's motion to dismiss remain poised on the brink of dismissal. Thus far, Derson has played its own version of hide-and-seek, pleading its claims in the most cursory fashion and burying relevant facts in remote corners of the complaint. As this litigation draws closer to trial, such secretive tactics will no longer be tolerated. In the near future, Derson must come forward with detailed factual allegations to substantiate its claims. If Derson does not soon lay its cards on the table, this court will gladly entertain

---

2. In the event that RMC failed to arrange for the exclusive franchises promised to Derson, the agreement provided for the remedy of termination. Because Derson has already availed itself of this remedy, RMC argues that Derson

has no right to recover additional damages. The agreement, however, does not designate termination as an exclusive remedy. Therefore, the agreement does not preclude Derson from seeking money damages.

RMC's motion for summary judgment on the remaining counts of Derson's complaint.

## II. Derson's and Siderius' Motion to Dismiss Counts VII and VIII of RMC's Counterclaim and Third–Party Complaint

RMC's counterclaim and third-party complaint contain eight counts. Derson and Siderius have moved to dismiss the last two of these counts, which raise claims of fraudulent concealment, fraudulent misrepresentation, and violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO").

### A. Count VII—Fraud

In Count VII of its counterclaim and third-party complaint, RMC alleges that the inaccurate reporting of sales and gross receipts by Derson and Siderius amounted to fraudulent concealment and fraudulent misrepresentation. As Derson and Siderius have pointed out, however, RMC fails to state a claim under either theory.

■■■■ Before it can prevail on a claim of fraudulent concealment, RMC must allege that it remained ignorant of the concealed facts through no fault of its own. *See Baker v. F & F Investment,* 420 F.2d 1191, 1199 (7th Cir.), *cert. denied,* 400 U.S. 821, 91 S.Ct. 40, 27 L.Ed.2d 49 (1970). In the case at bar, RMC cannot persuasively claim that it lacked the means to discover the facts allegedly concealed. Not only was Derson an affiliate of RMC at the time, but RMC had access to Derson's books and records.

■■■ As for RMC's allegation of fraudulent misrepresentation, the counterclaim fails to allege two essential elements of that cause of action: "intent to induce the other party to *act*" and *"action* by the other party in reliance on the truth of the statement." *Soules,* 79 Ill.2d at 286, 37 Ill.Dec. at 599, 402 N.E.2d at 601 (emphasis added). The counterclaim asserts that RMC relied on Derson's inaccurate sales reports; but RMC cannot recover on its fraud claim without demonstrating that Derson's misrepresentations induced RMC to take some affirmative action, such as entering into a contract. *See Merit Ins. Co. v. Colao,* 603 F.2d 654, 658 (7th Cir. 1979) (an essential element of fraud is "inducing the other party to take some affirmative action"). The counterclaim never alleges any action on RMC's part in reliance on the alleged misrepresentations.

Because RMC has failed to state a claim for fraudulent concealment or fraudulent misrepresentation, Count VII is dismissed.

### B. Count VIII—RICO

■■■ In Count VIII of the counterclaim, RMC accuses Derson and Siderius of violating RICO. RMC bases this claim on the mailing of allegedly fraudulent account statements by Derson and Siderius, as well as a telephone conversation during which Siderius allegedly made fraudulent misrepresentations.

Section 1964 of RICO allows a private plaintiff to bring a civil suit based upon a Section 1962 violation. 18 U.S.C. § 1964 (1982). In order to state a claim based upon 18 U.S.C. § 1962, a party must establish a "pattern" of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 495, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). The factors to be considered in determining whether a pattern of racketeering exists include the "number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries." *Morgan v. Bank of Waukegan,* 804 F.2d 970, 975 (7th Cir.1986).

In *Marks v. Pannell Kerr Forster,* 811 F.2d 1108, 1109–10 (7th Cir.1987), the pattern of racketeering alleged by the plaintiff against his former partner and an accounting firm included the mailing of four allegedly false tax schedules, the filing of allegedly false tax returns, and the denial of access to other information. The court affirmed the dismissal of the RICO claim because the activity involved a single scheme to defraud, it occurred over a short period of time (several months), and it inflicted a single injury on a single victim. *Id.* at 1112.

Much like the "pattern" rejected in *Marks*, the pattern alleged in the instant case flows from a single scheme. RMC's "pattern" rests on two paltry allegations, involving the preparation of inaccurate sales reports and a single misrepresentation made during a phone conversation. These allegations are insufficient to establish a pattern. The alleged predicate acts were small in number and unvaried in nature. The activity occurred over a time span of approximately seven months and resulted in a single injury to a single victim. Finally, RMC makes no allegations that Derson or Siderius defrauded other victims or engaged in similar conduct in the past. Because RICO is targeted at those who regularly commit such crimes, a single incident of fraud involving one victim will not entitle the defrauded party to RICO's civil remedies. *Lipin Enterprises Inc. v. Lee*, 803 F.2d 322, 324 (7th Cir.1986). "[T]he target of RICO is not sporadic activity or the isolated offender." *Marks*, 811 F.2d at 1111.

Rather than alleging the perpetration of multiple, distinct acts of fraud, RMC seeks to hold Derson and Siderius liable for a single course of conduct against one victim. This simply is not sufficient to establish liability under RICO. Therefore, Count VIII is dismissed.

### CONCLUSION

For the foregoing reasons, this court grants RMC's motion to dismiss with respect to Counts I, III, and VI of Derson's second amended complaint, but denies the motion with respect to Counts II, IV, V, and VIII. In addition, Derson's and Siderius' motion to dismiss Counts VII and VIII of RMC's counterclaim and third-party complaint is granted.

IT IS SO ORDERED.