**Michael TELLIS, Plaintiff-Appellant,**

**v.**

**UNITED STATES FIDELITY & GUARANTY COMPANY and Parker House Sausage Company, Defendants-Appellees.**

**No. 85-2704.**

United States Court of Appeals,
Seventh Circuit.

Argued April 1, 1986.

Decided Nov. 6, 1986.

On Remand from U.S. Supreme Court Aug. 10, 1987.

Rehearing Denied Sept. 9, 1987.

Charles R. Purcell, Chicago, Ill., for plaintiff-appellant.

Nancy Jo Arnold, Kralovec, Marquard, Doyle & Gibbons, Chtd., Chicago, Ill., for defendants-appellees.

Before CUMMINGS, EASTERBROOK and RIPPLE, Circuit Judges.

CUMMINGS, Circuit Judge.

In *Tellis v. United States Fidelity & Guaranty Co.*, 805 F.2d 741 (7th Cir.1986), this Court held that civil lawsuits brought under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*, should be subject to a uniform statute of limitations period regardless of the facts and circumstances of any particular claim and that civil RICO actions brought in Illinois are most appropriately governed by the state statute of limitations which provides a two-year period for actions seeking a statutory penalty, Ill.Rev.Stat. ch. 110, ¶ 13–202. The Supreme Court recently vacated our decision and remanded the case for further consideration in light of its opinion in *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, — U.S. —, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). *Tellis v. United States Fidelity & Guaranty Co.*, — U.S. —, 107 S.Ct. 3255, 97 L.Ed.2d 755 (1987). The Court in *Malley-Duff* agreed with our holding that there should be a uniform limitations period for civil RICO actions, but concluded that the most appropriate statute of limitations for such actions is the four-year statute of limitations applicable to Clayton Act civil enforcement actions, 15 U.S.C. § 15b. In light of the similarities in purpose and structure between the two statutes and the clear legislative intent to pattern RICO's civil enforcement provision after the Clayton Act's, the Court determined that the Clayton Act provided a far closer analogy to RICO than any state statute.

■ The events giving rise to plaintiff's RICO claim occurred during February and March of 1980. Plaintiff filed this action on May 24, 1983. Because the RICO action accrued within four years of the time the complaint was filed, the litigation was timely brought. We must therefore consider the other grounds for dismissal of plaintiff's action urged before the district court.

In addition to the statute of limitations argument, defendants moved to dismiss plaintiff's complaint on the alternative grounds that the RICO action was barred by the exclusivity provisions of the Illinois Workers' Compensation Act and that the complaint failed to state a claim under RICO because it did not allege a "pattern" of racketeering activity as required by the statute. 18 U.S.C. § 1962. The district court dismissed the complaint on the basis of the former argument. We decline to reach this difficult issue of preemption because it is clear from the facts alleged in plaintiff's complaint that he did not and in fact cannot allege a pattern of racketeering activity.

The existence of a pattern of racketeering activity is an essential element of a RICO claim under § 1962. See *Elliott v. Chicago Motor Club Ins.*, 809 F.2d 347, 349 (7th Cir.1986); *Morgan v. Bank of Waukegan*, 804 F.2d 970, 972–973 (7th Cir. 1986) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)). The statute provides that a pattern of racketeering activity requires "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). A plethora of recent cases in this Circuit have attempted to give meaning and scope to the so-called pattern requirement. See, *e.g., Skycom Corp. v. Telstar Corp.*, 813 F.2d 810 (7th Cir.1987); *Marks v. Pannell Kerr Forster*, 811 F.2d 1108 (7th Cir.1987); *Elliott*, 809 F.2d 347; *Morgan v. Bank of Waukegan*, 804 F.2d 970; *Lipin Enterprises, Inc. v. Lee*, 803 F.2d 322 (7th Cir.1986); *Illinois Department of Revenue v. Phillips*, 771 F.2d 312 (7th Cir.1985). As we explained in *Skycom*, these cases hold that a pattern of racketeering activity means predicate acts "sufficiently separate in time that they may be viewed as separate transactions." 813 F.2d at 818. What seems clear from these cases is that multiple acts of mail fraud in furtherance of a single episode of fraud involving one victim and relating to one basic transaction cannot constitute the necessary pattern. See *Skycom*, 813 F.2d

at 818; *Marks,* 811 F.2d at 1111–1112; *Elliott,* 809 F.2d at 350.

Plaintiff's amended complaint alleges that he was employed by the Parker House Sausage Co. from 1977 until May 21, 1979, when he was injured on the job. He subsequently required surgery and received temporary disability payments from Parker's insurer, United States Fidelity & Guaranty Co. ("USF & G"), until February 1980. At that time he attempted to return to work but was told that he had been discharged. In March 1980, USF & G offered a lump-sum settlement payment to plaintiff, contingent upon the waiver of his claim against Parker under the Illinois Workers' Compensation Act. To induce plaintiff to accept this offer and the Illinois Industrial Commission to approve the proposed settlement, both Parker and USF & G falsely stated at a hearing before the Commission that plaintiff would be returned to work at Parker at a "light duty" job. On the basis of this allegedly false representation, plaintiff accepted the settlement offer on March 20, 1980. When he later reported for work at Parker, he was denied reemployment. The complaint alleges that plaintiff has been unable to obtain other employment since his discharge by Parker.

As set out in the complaint, the predicate acts constituting a pattern of racketeering activity consist of a series of fraudulent mailings, including a letter requesting plaintiff to submit to a physical examination, a notice requesting that he appear at a hearing before the Illinois Industrial Commission, a medical report by the physician who examined him, the settlement check, a check made out to the physician in payment for his services in examining plaintiff and rendering his report, and a payment to USF & G's representative before the Commission. In addition the complaint alleges that defendants extorted from plaintiff his inchoate right to benefits under the Illinois Workers' Compensation Act. However, it is clear from the complaint that this alleged "extortion" was effected through the same fraudulent misrepresentations underlying the mail fraud claims and did not involve any distinct acts.

In its memorandum opinion dismissing plaintiff's complaint on the preemption issue, the district court ruled that the plaintiff had alleged a pattern of racketeering activity because the complaint clearly set out at least two mailings in furtherance of the alleged scheme to defraud. *Tellis v. United States Fidelity & Guaranty Co.,* 625 F.Supp. 92, 93 and n. 1 (N.D.Ill.1985). At the time that the court issued its ruling in January 1985, however, it did not have the benefit of our more recent opinions disavowing that notion. In *Lipin Enterprises,* we held that multiple acts of mail fraud did not constitute a pattern where they all occurred within a fairly short period of time, related to a single transaction (the acquisition of a large block of stock), involved a single victim, and inflicted a single injury. As we explained in *Morgan v. Bank of Waukegan:*

> The mere fact that the complexity of the transaction generates numerous pieces of paper and hence a greater number of possible fraudulent acts does not make these predicate acts ongoing over a period of time so as to constitute separate transactions that are distinct in time and place.

804 F.2d at 976. Our more recent cases have tracked the *Lipin* holding. See *Skycom,* 813 F.2d at 818 (no pattern where allegedly fraudulent representations led up to a single contract and the transfer of a single business opportunity); *Marks,* 811 F.2d at 1112 (no pattern where multiple predicate acts related to a single scheme to defraud a single individual of his interests in 21 related partnerships); *Elliott,* 809 F.2d at 350 (no pattern where multiple acts of alleged mail fraud all related to plaintiffs' attempt to settle one claim under their uninsured motorist insurance policy).

██ Plaintiff's action is indistinguishable from these cases. The multiple predicate acts alleged in the complaint all clearly relate to the same transaction, namely defendants' fraudulent efforts to induce plaintiff to settle his workers' compensation claim, involved a single victim, inflicted a single injury, and occurred within a two-month period. An isolated episode of fraud does not a pattern make. Plaintiff's RICO

claim is fatally defective. We therefore affirm the district court's dismissal of the action although on another ground.