**DESIGN TIME, INC., et al., Plaintiffs,**

v.

**SYNTHETIC DIAMOND TECHNOLOGY, INC., et al., Defendants.**

**No. S86–519.**

United States District Court,
N.D. Indiana,
South Bend Division.

Oct. 13, 1987.

Timothy W. Woods, South Bend, Ind., for plaintiffs.

James H. Ham, III, Timothy J. Haffner, Fort Wayne, Ind., Theodore R. Boehm, Indianapolis, Ind., for Raffensperger, Hughes & Co., Farron and Stscherban.

E. Spencer Walton, Jr., South Bend, Ind., for Indiana Nat. Bank of Indianapolis.

Lee B. McTurnan, Harry F. Todd, Indianapolis, Ind., Thomas H. Singer, South Bend, Ind., for Barnes & Thornburg.

## MEMORANDUM AND ORDER

MILLER, District Judge.

This cause comes before the court on motions to dismiss for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). The plaintiffs' amended complaint attempts to state claims of securities fraud and RICO violations by Synthetic Diamond Technology, Inc., which has been defaulted, and five other defendants, who seek dismissal. For the reasons that follow, the court finds that the dismissal motions should be granted.

## I. The Case

Because this cause is before the court on a motion to dismiss for failure to state a claim, the court accepts as true the well-pleaded allegations of the plaintiffs' complaint. *City of Evanston v. Regional Transit Authority*, 825 F.2d 1121 (7th Cir. 1987).

### A. Facts

This suit revolves about the attempt to establish and equip a plant for the manufacture and sale of synthetic industrial diamonds through an entity called Synthetic Diamond Technology, Inc. ("SDT"). The project's anticipated cost was $6,600,000.00. SDT was to raise $2,000,000.00 of that cost through the sale of promissory notes; the balance was to be raised through the sale of Economic Development Revenue Bonds pursuant to a Trust Indenture between the City of South Bend, Indiana and Indiana National Bank ("INB"), Trustee. Defendant Raffensperger, Hughes & Co. ("Raffensperger"), through its employees, John R. Farron, Jr. and Paul Stscherban, together with Raffensperger's attorneys, Barnes & Thornburg, prepared a Private Placement Memorandum ("the Memorandum") that was used to solicit buyers for the promissory notes issued by SDT.

Design Time, Inc. is an Indiana corporation with its principal place of business in Elkhart, Indiana. Panylrama (Design Time, Inc.) Profit–Sharing Plan is an employee benefit plan administered in Elkhart, Indiana. Design Time and Panylrama are the plaintiffs in this action. Each plaintiff is a holder of a $250,000.00 note issued by SDT and warrants to purchase SDT stock. The plaintiffs purchased these notes and warrants on September 15, 1983. According to the Memorandum, the securities were described as involving a high degree of risk and were available only to sophisticated investors.

In deciding to invest in SDT, Design Time and Panylrama relied on the Memorandum, which stated that the Trustee would make payments to SDT for equipment purchases pursuant to a specific timetable and other conditions. The plaintiffs also relied upon representations that the greatest risk to the project was SDT's ability to penetrate the market and sell the product.

INB executed a trust agreement with the City of South Bend on October 6, 1983, becoming the Trustee of the bond issue. INB did not, as things turned out, disburse the trust proceeds according to the schedule set forth in the Memorandum. SDT produced no synthetic diamonds. SDT has defaulted on its promissory notes; substantially all of SDT's assets are subject to senior security interests.

### B. The Complaint

Design Time and Panylrama filed this action on September 12, 1986, against SDT, INB, Barnes & Thornburg, Raffensperger, Farron and Stscherban. The amended complaint, filed November 6, 1986, is in fourteen counts.

Count I alleges violation of § 10(b) of the Securities Exchange Act of 1934 ("the 1934 Act"), 15 U.S.C. § 78a *et seq.*, and Rule 10b–5, 17 C.F.R. § 240.10b–5. Count II alleges violation of § 17(a) of the Securities Act of 1933 ("the 1933 Act"), 15 U.S.C. § 77q(a). The plaintiffs base those counts on allegations that the defendants offered to sell and sold the notes to the plaintiffs, who relied on the Memorandum and other false oral and written representations and omissions of material fact. Count I alleges these statements and omissions were made knowingly, fraudulently and intentionally; Count II alleges the statements and omissions were made negligently. Counts I and II also allege, according to the plaintiffs, that each of the defendants aided and abetted SDT and each other in violating the securities laws.

Count III of the amended complaint alleges that the defendants' conduct violated three sections of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*

Counts IV through XIV state pendent state claims. Counts IV and V allege violation of Indiana securities laws and Indiana's RICO statute. IND.CODE 23–2–

1–12; 23–2–1–12.1; 23–2–1–19; 35–45–6–2(a)(1), (2). Count VI alleges that Raffensperger and Barnes & Thornburg breached fiduciary duties to the plaintiffs. Count VII alleges that Raffensperger breached the escrow agreement, of which the plaintiffs claim to have been third-party beneficiaries.

Count VIII alleges that Raffensperger breached its agency relationship with the plaintiffs when it released the proceeds of the sale of the notes. Count IX alleges that Raffensperger breached its duty of professional care as the plaintiffs' broker; Count X alleges that Barnes & Thornburg breached its duty of professional care as the plaintiffs' attorney. Counts XI alleges that INB breached its duty to the plaintiffs as Trustee. Count XII alleges that INB breached its duties under the Trust Indenture, of which the plaintiffs claim to have been third-party beneficiaries. Counts XIII and XIV deal solely with SDT, which has been defaulted.

## II. The Parties' Arguments

### A. Count I

The moving defendants argue that Count I of the amended complaint fails to satisfy Fed.R.Civ.P. 9(b), which requires that allegations of fraud be pleaded with particularity. They maintain that the complaint (1) fails to specify the specific statements that are alleged to constitute misrepresentations, and (2) fails to allege any specific facts from which the trier of fact could infer scienter.

Further, the defendants maintain that the complaint "lumps" them together by alleging generally that "the defendants", or subgroups of defendants, made misrepresentations concerning certain topics, without specifying which defendant made which statement. They also complain that they are unable to discern from the complaint which defendants, if any, are to be held liable as principal violators under Rule 10b–5, and which defendants, if any, are to be held liable as aiders and abettors.

The defendants also argue that while the complaint alleges fraud in the defendants' failure to inform the plaintiffs of the exist-ence of a supplemental memorandum issued two days before the plaintiffs' purchase of the notes, the complaint contains no express or implied allegation as to how the plaintiffs were damaged by the supplemental memorandum's issuance. The complaint alleges that the Trustee's disbursements comported with neither the original memorandum nor the supplemental memorandum.

The plaintiffs respond that the complaint sets forth the allegations of fraud with sufficient specificity. The complaint identifies the types of misrepresentations made, and the topics to which those misrepresentations related. Rule 9(b) does not require all of the evidentiary facts to be pleaded, they contend, and the allegations of this complaint suffice.

With respect to the "lumping" assertion, the plaintiffs respond that Raffensperger, Farron, Stscherban and Barnes & Thornburg all had a hand in preparing the Memorandum containing the written misrepresentations. A plaintiff cannot be expected to know and allege before discovery which defendant prepared each specific portion of such a joint written statement.

INB raises a separate argument with respect to the securities claims. It maintains that because it did not become Trustee until three weeks after the promissory note transactions in which the plaintiffs participated, it cannot be held liable, as either a principal violator or an aider and abettor, for any misrepresentations that may have induced the plaintiffs to make their securities purchases. The plaintiffs respond that to think that INB had no participation in the transaction before it officially became a Trustee is to blink reality. INB must have been involved in the project before August 1, 1983; its failure to disclose information to the plaintiffs makes INB liable as an aider and abettor.

### B. Count II

Count II of the complaint attempts to state a cause of action under § 17(a)(2) of the Securities Act of 1933. 15 U.S.C. § 77q(a)(2). The defendants argue simply

that § 17(a) creates no private cause of action. The plaintiffs, of course, disagree.

### C. Count III

The defendants mount several attacks upon the RICO claims that Count III purports to state.

First, they argue that Rule 9(b) renders the RICO count insufficient. Because the claim relies upon predicate acts consisting of fraud (mail fraud, wire fraud and securities fraud), the defendants contend that Rule 9(b) requires the plaintiffs to plead those acts of fraud with particularity. As outlined above with respect to the securities claim, the defendants argue that the complaint lacks that particularity.

Second, they argue that Count III fails to state a RICO claim because the facts alleged lack the continuity necessary to establish a pattern of racketeering activity, as required by 18 U.S.C. § 1961(5). This argument draws on footnote 14 of *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985).

Third, the defendants contend that the RICO claim must fail because Count III names SDT as the enterprise and as a "person" liable under § 1962(c). A party cannot be both. *Haroco, Inc. v. American Nat'l Bank & Trust Co. of Chicago*, 747 F.2d 384 (7th Cir.), *aff'd* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985).

INB contends that the RICO conspiracy count against it must fail because the complaint alleges that INB conspired to sell securities, rather than to release moneys wrongfully. The law requires that a RICO conspirator have lent affirmative assistance to the predicate acts and embrace the wrongful objective. The wrongful objective here was to defraud the plaintiffs. The complaint does not allege sufficiently, INB argues, that INB embraced that objective or lent affirmative assistance to the predicate acts.

The plaintiffs argue that the allegations of their complaint present sufficient continuity to establish a pattern of racketeering activity. The fraudulent sale of the promissory notes and fraudulent sale of the Economic Development Bonds constitute separate, but related, schemes which caused distinct injury to the eight note purchasers, including the plaintiffs, and all bond purchasers. Without the notes and bonds to make up the entire $6,600,000.00 investment, the plaintiffs assert, the enterprise never would have been brought to life.

The plaintiffs argue further that it is permissible to name SDT as an enterprise and violator under § 1962(a). To name SDT in both capacities under § 1962(c) would be impermissible, but the complaint does not do so; paragraph 3 of Count III names only Raffensperger, Farron, Stscherban, INB and Barnes & Thornburg as defendants in the § 1962(c) claim. Further, only SDT may claim protection of the rule prohibiting naming a defendant as both RICO violator and RICO enterprise under § 1962(c).

The plaintiffs contend that the complaint's allegations are sufficient to allow an inference of fraud. Barnes & Thornburg acted as attorney for SDT, for the plaintiffs and for another entity involved in the transaction; as Trustee, INB owed fiduciary duties to the plaintiffs and others; Raffensperger acted as broker for the plaintiffs and for SDT. Fraud may be inferred, the plaintiffs argue, from the existence of these conflicts of interest.

Finally, the plaintiffs contend that the complaint states a RICO conspiracy claim. That each defendant commit or participate in a predicate act is not required. The allegation that each defendant conspired with the others with the object of raising money to conduct SDT's affairs through a pattern of racketeering activity is sufficient.

### III. Rule 9(b) and Section 10(b) of the 1934 Act

Rule 9(b), Fed.R.Civ.P., provides that when fraud is pleaded something "slightly more" is needed beyond the short, plain statement of the claim normally sufficient under Rule 8. *Tomera v. Galt*, 511 F.2d 504, 508 (7th Cir.1975). Rule 9(b) requires that "the circumstances constituting fraud

or mistake shall be stated with particularity". This Rule governs allegations of securities fraud under Rule 10b-5. *Zerman v. Ball,* 735 F.2d 15 (2d Cir.1984); *Tomera v. Galt,* 511 F.2d 504; *Schaefer v. First National Bank of Lincolnwood,* 509 F.2d 1287, 1297 (7th Cir.1975), *cert. denied* 425 U.S. 943, 96 S.Ct. 1682, 48 L.Ed.2d 186 (1976).

■ While a plaintiff need not plead "evidentiary facts", most courts have agreed that Rule 9(b) requires complaints to specify the identity of the person making the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.[1] *Zerman v. Ball,* 735 F.2d at 22; *McKee v. Pope Ballard Shepard & Fowle, Ltd.,* 604 F.Supp. 927, 930 (N.D. Ill. 1985); *D & G Enterprises v. Continental Illinois National Bank & Trust Co.,* 574 F.Supp. 263, 268 (N.D. Ill. 1983); *Lincoln Nat'l Bank v. Lampe,* 414 F.Supp. 1270, 1279 (N.D. Ill. 1976). A complaint that attributes misrepresentations to all defendants, "lumped" together for pleading purposes, generally is insufficient. *McKee v. Pope Ballard Shepard & Fowle, Ltd.,* 604 F.Supp. at 931; *Bosio v. Norbay Securities, Inc.,* 599 F.Supp. 1563, 1570 (E.D. N.Y. 1985); *Homburger v. Venture Minerals, Inc.,* [1985–1986 Transfer Binder], Fed.Sec.L.Rep. ¶ 92,205 (S.D. N.Y. April 24, 1985) [Available on WESTLAW, 1985 WL 549].

■ The plaintiffs' complaint contains the following allegations with respect to the misrepresentations by the defendants:

10. The Memorandum was prepared, in whole or in part, by one or more agents of SDT and Raffensperger and one or more partners or employees of Barnes.

\* \* \* \* \* \*

16. SDT and Raffensperger, by and through their officers, employees and agents, and Farron, Stscherban and Barnes, directly or indirectly, orally or in writing, made untrue statements of material facts and omitted to state necessary material facts in connection with the offering and sale of the Securities of SDT, to Plaintiffs, their officers, employees and agents, and others, on more than one (1) occasion, including without limitation in one (1) or more of the following respects:

A. The profitability and likelihood of success of SDT.

B. The nature and extent of the risks of investment in SDT.

C. The terms and conditions under which the proceeds from the sale of the Series 1983 Bonds and the Securities would be released from trust or escrow, respectively.

D. The knowledge, experience, intent and capability of SDT to design, build, deliver, operate and maintain the equipment.

E. The status of the design, research, development, drawings and specifications of the Equipment.

F. The value of the Equipment.

G. The fact that, and time by which the Equipment would be constructed, shipped to and operated in South Bend, Indiana.

\* \* \* \* \* \*

22. The foregoing acts, omissions, advise, representations and statements of the defendants, and each of them, were done, uttered, committed or performed knowingly, intentionally, recklessly, negligently, carelessly, with scienter, without due diligence, unreasonably and in breach and violation of fiduciary, agency and contractual duties owed to the Plaintiffs.

\* \* \* \* \* \*

### COUNT I

### FEDERAL SECURITIES FRAUD CLAIM—1934 ACT

\* \* \* \* \* \*

---

**1.** The defendants devote considerable pages to exposition of the reasons for this requirement for greater specificity than generally is required under the Federal Rules of Civil Procedure, most of which reasons tend to impugn the motives of persons who bring fraud claims. The law under Rule 9(b) is sufficiently well settled to obviate the need for reciting those reasons; the record contains no basis for impugning the reasons behind the filing of this suit.

8. Each of the defendants aided and abetted each other in carrying out the scheme described above and, at all times material to this cause of action, intended to deceive, manipulate or defraud prospective purchasers of the Notes, including the Plaintiffs herein.

9. More particularly, the Memorandum manufactured by the defendants SDT and its agent, Raffensperger, and Barnes, specified that the proceeds from the Bond sale would be held by the Trustee and would only be dispersed in accord with a fixed time table and under specified conditions. Despite the representations contained in the Memorandum, as described, the Indenture imposed less demanding conditions on the Trustee prior to releasing the Bond funds. Without the knowledge of the Plaintiffs, the defendants SDT and Raffensperger caused the Memorandum to be supplemented on or about September 13, 1986, which changed or purported to modify certain portions of the Memorandum, including the manner in which the Bond Construction funds monies would be disbursed. The defendants each knew that the representations made in the Memorandum, as to when and under what conditions Bond trust monies would be released, were false, fraudulent and material. None of the defendants advised the Plaintiffs that the Memorandum had been supplemented. The defendants each knew, or should have known, that the Memorandum failed to state all material facts necessary in order to make the statements made in light of the circumstances under which they were made, not misleading, all of which was in violation of the 1934 Act and Rule 10b–5.

10. The defendants Raffensperger, Farron and Stscherban falsely represented that the only real risks involved in the investment was the ability of SDT to penetrate the market place and sell the product, when in fact the biggest risk, undisclosed by them, the Memorandum or any of the other defendants, was the inability or failure of the manufacturer to build, ship and operate the equipment.

The plaintiffs' complaint does not allege fraud with sufficient particularity to withstand a motion to dismiss under Rules 9 and 12.[2]

### A. Particularity with Respect to the Misrepresentations

■ The complaint, read favorably to the plaintiffs, seems to allege that certain false statements were made in the Memorandum; paragraph 10 of the amended complaint alleges generally that the Memorandum was prepared by one or more agents of SDT, Raffensperger, and one or more employees or partners of Barnes & Thornburg. The defendants complain that the complaint does not allege which defendant made each such statement in the Memorandum. The plaintiffs correctly argue that they cannot be expected to know before discovery each defendant's contributions to a joint product. Unless the plaintiffs identify the statements within the Memorandum that are alleged to form the basis of the 10b–5 claim, however, the defendants are equally unable to make that determination without discovery.

The difficulty is enhanced by the language of paragraph 16 of the amended complaint, which cannot be read as limited

2. Barnes & Thornburg makes repeated references to Rules 9 and 11 when arguing the insufficiency of the complaint's allegations. The court does not view Rule 11 as enhancing the pleading requirements of Rules 8 and 9, and Barnes & Thornburg has cited no authority for such a position. The 1983 amendments to Rule 11 eliminated the former provision for striking a pleading that did not comply with the requirements of the Rule. Further, the provisions of Rule 11 are not limited to allegations of fraud. If Rule 11 is read to require pleading with specificity beyond that required by Rule 9, it also would require specificity beyond that required in Rule 8 in cases not involving fraud. No court has so held.

The court assumes that Barnes & Thornburg's repeated references to Rule 11 were intended to put the plaintiffs on notice of Barnes & Thornburg's opinion of the plaintiffs' prefiling factual and legal inquiry. Such notice places no issue before the court; the court finds no basis for invoking the provisions of Rule 11 *sua sponte*. Accordingly, the court finds it unnecessary to discuss Rule 11 further in this opinion.

to the Memorandum. That paragraph alleges that defendants other than INB misrepresented facts and omitted necessary material facts relating to the investment. The paragraph alleges that those misrepresentations and omissions were oral or written, were direct or indirect, were made on more than one occasion, were made "to Plaintiffs, their officers, employees and agents, and others". The paragraph sets forth a partial list of the topics on which these representations were made.

This paragraph gives no hint as to what was said, to whom, by whom, when or where. Essentially, the paragraph alleges nothing more than that misrepresentations were made. Paragraph 16 contains many other words ("directly or indirectly, orally in writing ... to Plaintiffs, their officers, employees and agents, and others, on more than one (1) occasion, including without limitation in one (1) or more of the following respects"), but due to their lack of particularity, those words add nothing to the simple allegation of misrepresentation. Such. an allegation suffices under Rule 8, but does not provide the "slightly more" required by Rule 9(b). *Tomera v. Galt*, 511 F.2d 504 (7th Cir.1975).

No other portion of the amended complaint offers particularity concerning the allegations of fraud. The amended complaint simply does not disclose: (a) the content of representations alleged to have been false; (b) who is alleged to have made those representations, at least to the extent the complaint may allege the making of representations other than those contained in the Memorandum; (c) to whom the representations allegedly were made; or (d) when the representations were made. No defendant can identify from the plaintiffs' amended complaint the conduct that allegedly renders that defendant liable. Each defendant, except for INB, is alleged to have made representations of the range discussed in paragraph 16. Such allegations do not plead fraud with the specificity required by Rule 9(b). *McKee v. Pope Bal-lard Shepard & Fowle, Ltd.*, 604 F.Supp. at 931.

### B. Particularity with Respect to Scienter

■ To the extent the plaintiffs' Rule 10b–5 claim is based on the assertion that the defendants misrepresented the greatest risk to the investment, a second ground requires dismissal against all defendants for failure to state a claim: the complaint's factual allegations cannot support an inference of scienter. While Rule 9(b) allows general averments concerning "Malice, intent, knowledge, and other condition of mind of a person", the complaint must set forth specific factual allegations that would support an inference[3] of actual knowledge necessary for a showing of scienter. *Ross v. A.H. Robins Co.*, 607 F.2d 545, 558 (2d Cir.1979); *Posner v. Coopers & Lybrand*, 92 F.R.D. 765 (S.D.N.Y.1981), *aff'd without opinion* 697 F.2d 296 (2d Cir.1982).

No facts are alleged from which the court or jury could reasonably infer that any of the defendants had better knowledge than the plaintiffs concerning the risks of the SDT venture. Without more, an allegation of faulty economic prognostication will not support an inference of fraud. *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 117 (2d Cir.1982); *Polin v. Conductron Corp.*, 552 F.2d 797, 805 (8th Cir.), *cert. denied* 434 U.S. 857, 98 S.Ct. 178, 54 L.Ed.2d 129 (1977).

The plaintiffs argue that scienter can be implied from the defendants' conflicts of interests in their representation of several of the parties to the transactions. The argument is strongest with respect to Barnes & Thornburg, which is alleged to have represented numerous parties as counsel, and weakest with respect to INB, which represented nobody until it became Trustee after the plaintiffs purchased their securities. If facts were alleged from which it could be inferred that any of Barnes & Thornburg's clients knew of the greater risk to the venture, that knowledge

---

**3.** This is not to say, however, that such inferences are to be pleaded as facts. *See Skycom Corp. v. Telstar Corp.*, 813 F.2d 810 (7th Cir.1987).

might be imputed to Barnes & Thornburg. The amended complaint, however, alleges no such facts.

### IV. Section 17(a) of the 1933 Act; Implied Cause of Action

■ Count II of the amended complaint alleges that the defendants violated § 17(a)(2) of the Securities Exchange Act of 1933[4]; the defendants maintain that § 17(a) allows no such suit. Whether § 17(a) creates a private right of action has been described as an "open question" in the Seventh Circuit. *Ray v. Karris,* 780 F.2d 636, 641 n. 3 (7th Cir.1985); *Teamsters Local 282 Pension Trust Fund v. Angelos,* 762 F.2d 522, 530 (7th Cir.1985); *Peoria Union Stockyards Co. v. Penn Mutual Life Ins. Co.,* 698 F.2d 320, 323 (7th Cir.1983). The Supreme Court expressly has declined to decide the issue. *Bateman Eichler, Hill Richards, Inc. v. Berner,* 472 U.S. 299, 304, 105 S.Ct. 2622, 2625, 86 L.Ed. 2d 215 (1985); *Herman & MacLean v. Huddleston,* 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983); *Teamsters v. Daniel,* 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979).

### A. The Plaintiffs' Authority

The plaintiffs argue that at least three circuit courts of appeal have found a private cause of action in § 17(a). *Daniel v. International Brotherhood of Teamsters,* 561 F.2d 1223 (7th Cir.1977), *rev'd on other grounds* 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979); *Stephenson v. Calpine Conifers II, Ltd.,* 652 F.2d 808 (9th Cir. 1981); *Kirshner v. United States,* 603 F.2d 234 (2d Cir.1978). The cases cited by the plaintiffs do not, however, reflect the current state of the law.

In finding the existence of a private right of action under § 17(a) in *Daniel v. International Brotherhood of Teamsters,* 561 F.2d 1223, the Seventh Circuit noted with approval earlier cases that concluded there was little reason for denying the existence of such a cause of action once a claim had been established under § 10(b) of the 1934 Act. *Schaefer v. First National Bank of Lincolnwood,* 509 F.2d 1287, 1293 (7th Cir. 1975); *Local 734 Trust v. Continental Illinois Nat'l Bank & Trust Co.,* [73–74 Transfer Binder] CCH Fed.Sec.L.Rep. ¶ 94,565, at 95,963 (N.D. Ill. 1974) [Available on WESTLAW, 1974 WL 403].

The Second Circuit used a similar rationale in finding a private cause of action in *Kirshner v. United States,* 603 F.2d 234 (2d Cir.1978). The court attributed to Judge Friendly's concurring opinion in *SEC v. Texas Gulf Sulphur Co.,* 401 F.2d 833, 867 (2d Cir.1968), an observation "that there was little practical point in denying the existence of an action under § 17 once it is established that the aggrieved buyer has a private action under § 10(b) of the 1934 Act". 603 F.2d at 241. Not surprisingly, Judge Friendly had demonstrated a more thorough understanding of the difference between § 10(b) of the 1934 Act and § 17(a) of the 1933 Act than that attributed to him by the *Kirshner* court. Judge Friendly had written in his *Texas Gulf Sulphur* concurrence:

> Once it had been established, however, that an aggrieved buyer has a private action under § 10(b) of the 1934 Act, there seemed little practical point in denying the existence of such an action under § 17—with the important proviso that fraud, as distinct from mere negligence, must be alleged.

4. Section 17(a) of the Securities Exchange Act of 1933 provides:

(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of mails, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. § 77q(a).

401 F.2d at 867. The *Kirshner* court simply ignored Judge Friendly's "important proviso".

The Ninth Circuit found the *Kirshner*'s holding, which it characterized as "[a]greeing with Judge Friendly's comments in" *Texas Gulf Sulphur*, persuasive. *Stephenson v. Calpine Conifers II, Ltd.*, 652 F.2d 808, 815 (9th Cir.1981). The court found the Second Circuit's reasoning accurate in "light of the minimal differences between § 17(a) of the 1933 Act and § 10(b) of the 1934 Act". *Id.*

Each of the three circuit court of appeals cases that Design Time and Panylrama rely upon, then, was based upon the premise that no meaningful distinction exists between a § 10(b) claim and a § 17(a) claim. That premise, though, cannot survive the holdings of two Supreme Court cases.

In *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), the Court held scienter is a necessary element for a private cause of action for damages under § 10(b) of the 1934 Act and Rule 10b-5. In *Aaron v. SEC*, 446 U.S. 680, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980), the Court held that scienter is a necessary element of a violation of § 17(a)(1), but not §§ 17(a)(2) or (a)(3) of the 1933 Act. The *Aaron* holding established that, at least with respect to subsections (2) and (3) of § 17(a), there is much more than "minimal differences between § 17(a) of the 1933 Act and § 10(b) of the 1934 Act". *Stephenson v. Calpine Conifers II, Ltd.*, 652 F.2d at 815. Under the latter, scienter must be shown; under the former, it need not. See *Mann v. Oppenheimer & Co.*, 517 A.2d 1056 (Del. 1986).

In *In re Washington Public Power Supply Systems Securities Litigation*, 823 F.2d 1349 (9th Cir.1987), the Ninth Circuit held that *Stephenson* had been decided wrongly. The court concluded that the view of §§ 17(a)(2) and (a)(3) set forth in *Aaron* required a separate determination of whether those sections create a private cause of action. *Stephenson*, upon which Design Time and Panylrama rely, is no longer good law.

The Supreme Court reversed *Daniel* on grounds other than the existence of a private right of action under § 17(a), specifically declining to express any view on the matter of the implied cause of action for damages. *Teamsters v. Daniel*, 439 U.S. 551, 557 n. 9, 99 S.Ct. 790, 795 n. 9, 58 L.Ed.2d 808 (1979). The plaintiffs argue that the Seventh Circuit's *Daniel* opinion remains good law with respect to claims based on negligence under §§ 17(a)(2) or (a)(3). The plaintiffs argue that the each post-*Daniel* case within the Seventh Circuit addressed claims under § 17(a)(1), which contains the same scienter requirement as does § 10(b). It is, however, precisely because §§ 17(a)(2) and (a)(3) do not require scienter and § 17(a)(1) does that: (1) the Seventh Circuit has found it unnecessary to determine whether an implied cause of action for damages is to be found in § 17(a) when the claim is based on § 17(a)(1); and (2) the issue must be reexamined as to §§ 17(a)(2) and 17(a)(3) after *Aaron v. SEC.*

Moreover, Judge Easterbrook's language in *Teamsters Local 282 Pension Trust Fund v. Angelos*, 762 F.2d 522 (7th Cir. 1985), leaves no room for the interpretation urged by the plaintiffs:

> In saying this, we do not pass on a question that is open in this circuit—whether there is a private right of action to enforce § 17(a).... We held in *Daniel* ... that there is such an action. But the court's reversal of our judgment, coupled with its express refusal to decide the § 17(a) issue ... removed the authority of the discussion in *Daniel.* Since then the Court has altered the standards for implying private rights of action and pointedly declined to address the § 17(a) issue.... Our court has not considered the issue after *Daniel,* and we do not do so now. We indicated in *Penn Mutual* that in a case in which a Rule 10b-5 action is available, there is no reason to think that a § 17(a) action would have different elements, and the claim therefore adds nothing to plaintiff's arsenal. The Fund has not argued that a private party gets the benefit of the holding in *Aaron* that §§ 17(a)(2) and (3) do not

require wilful misconduct. Here, as in *Penn Mutual,* the suit should proceed as if only a Rule 10b–5 claim had been raised.

762 F.2d at 530–531.

Finally, the Second Circuit, in an opinion by Judge Friendly, has indicated a willingness to reexamine its *Kirshner* holding in light of subsequent Supreme Court decisions and certain academic works. *Yoder v. Orthomolecular Nutrition Institute, Inc.,* 751 F.2d 555, 559 n. 3 (2d Cir.1985).

In summary, of the three circuit court of appeals decisions cited by the plaintiffs in support of the existence of a private right of action under § 17(a)(2), one has been described as incorrectly decided and is no longer controlling precedent within that circuit, another has been described as having had the authority of its discussion removed by the Supreme Court's reversal, leaving an open question within that circuit, and the court that decided the other has expressed a willingness to reexamine the holding in light of later developments.

The court does not find itself bound by those cases to hold that a private right of action exists.

### B. No Implied Cause of Action

The case now before the court requires the court to determine the issue not presented in the Seventh Circuit's post-*Daniel* cases. *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), as modified by *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979), sets forth the proper analysis for determining the existence of an implied cause of action. Other courts have ably, thoroughly and persuasively applied the *Cort v. Ash* analysis to § 17(a). *In re Washington Public Power Supply Systems Securities Litigation,* 823 F.2d 1349 (9th Cir.1987); *Landry v. All American*

*Assurance Co.,* 688 F.2d 381 (5th Cir.1982). To repeat the analysis found in those cases would do no more than lengthen this opinion; the court agrees with those cases' analyses and with their conclusions that § 17(a) provides no implied private cause of action for damages.[5]

Accordingly, the defendants' motion to dismiss Count II of the amended complaint for failure to state a claim should be granted.

### V. The Racketeering Claims

In Count III of the amended complaint, the plaintiffs seek to state claims under 18 U.S.C. § 1962(a) (making it unlawful for one who has received income from a pattern of racketeering activity to invest such income in any enterprise affecting interstate commerce), § 1962(c) (making it unlawful for one associated with an enterprise affecting interstate commerce to conduct the enterprise's affairs through a pattern of racketeering activity), and § 1962(d) (making it unlawful for one to conspire to violate § 1962(a) or § 1962(c)). A "pattern of racketeering activity" is an essential element to each of these claims.

18 U.S.C. § 1961(5) defines "pattern of racketeering activity" as requiring at least two predicate acts of racketeering activity. In its now-oft-repeated footnote in *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985), the Supreme Court cautioned that two isolated predicate acts do not constitute a pattern. Drawing on that footnote, the courts have viewed the "pattern" requirement as including concepts of both "continuity" of conduct and "relationship" of the predicate acts. *Marshall & Ilsley Trust Co. v. Pate,* 819 F.2d 806 (7th Cir. 1987). The defendants contend that the plaintiffs have shown no continuity; the plaintiffs contend that they have.

---

5. Most, but not all, recent reported district court opinions within this circuit concur with this analysis. *Beck v. Cantor, Fitzgerald Co.,* 621 F.Supp. 1547 (N.D.Ill.1985); *Citizens State Bank v. Continental Assur. Co.,* 598 F.Supp. 1111 (W.D.Wis.1984) *Roskos v. Shearson/American Express, Inc.,* 589 F.Supp. 627 (E.D.Wis.1984). In *Onesti v. Thomson McKinnon Securities, Inc.,*

619 F.Supp. 1262 (N.D.Ill.1985), the court found a private cause of action based on "the minimal differences between § 17(a) of the 1933 Act and § 10(b) of the 1934 Act". As noted above, this court does not deem the presence or absence of the scienter requirement to be a "minimal" difference.

### A. "Pattern": Seventh Circuit View

The Circuits are not in agreement concerning the meaning of the "continuity" requirement. The Seventh Circuit has explained its "middle course" as requiring that the predicate acts be "ongoing over an identified period of time so that they can fairly be viewed as constituting separate transactions, i.e., 'transactions' somewhat separated in time and place". *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir.1986), quoting *Graham v. Slaughter*, 624 F.Supp. 222, 225 (N.D.Ill.1985), quoting in turn *United States v. Moeller*, 402 F.Supp. 49, 57–58 (D.Conn.1975). Among the relevant factors are the predicate acts' number and variety, the length of time over which the predicate acts were committed, the existence of separate schemes and distinct injuries, and the number of victims. *Morgan v. Bank of Waukegan*, 804 F.2d at 975. As the *Morgan* court explained, however, no enunciation of the standard will be exhaustive:

> However, the mere fact that the predicate acts relate to the same overall scheme or involve the same victim does not mean that the acts automatically fail to satisfy the pattern requirement. The doctrinal requirement of a pattern of racketeering activity is a standard, not a rule, and as such its determination depends on the facts and circumstances of the particular case, with no one factor being necessarily determinative.

804 F.2d at 976–76. Accordingly, the court must review the cases decided under this standard, and measure the facts of those cases against the facts of this case.

*Morgan v. Bank of Waukegan*, 804 F.2d 970, involved a series of corporations in which individuals were induced to invest money and home equity. The plaintiffs eventually understood the series of corporations to need a loan from the Bank of Waukegan, and the bank required them to convey a beneficial interest in their homes, and sign various guarantees. The defendants then stripped one of the corporations of much of its assets and formed a new corporation to purchase the remaining assets of the first corporation at a fore-closure sale. The "strip, foreclose and buy" process was repeated seventeen months later, when the newly formed corporation was stripped of much of its assets. Mailings were made in connection with both foreclosure sales. However, deficits remained after the sales, and the defendants foreclosed on the plaintiffs' home.

The court had little difficulty in finding continuity. Several acts of mail fraud were alleged to have occurred over a period of several years. Some mailings related to two foreclosure sales nearly two years apart; others related to fraudulent statements in the original loan application. Although a single scheme existed, the acts "were ongoing over a period of nearly four years in addition to being distinct acts". 804 F.2d at 976. The court noted that had the predicate acts been more closely related, the continuity requirement might not have been satisfied.

The *Morgan* court noted two earlier cases to illustrate its "middle ground" approach to the continuity requirement, and to highlight the importance of continuity. A single scheme, coupled with continuing acts of mail fraud, was found sufficient to establish a pattern in *Illinois Department of Revenue v. Phillips*, 771 F.2d 312 (7th Cir.1985). In that case, the defendant had made nine separate mailings of fraudulent state tax returns over a nine-month period.

In apparent contrast to *Phillips*, the *Morgan* court also discussed *Lipin Enterprises v. Lee*, 803 F.2d 322 (7th Cir.1986). *Lipin Enterprises* involved at least twelve separate acts of mail fraud in furtherance of inducing the plaintiff to buy Rifco Auto Leasing Company for more money than it was worth. The *Lipin Enterprises* court found that these predicate acts, all done to defraud a single victim on a single occasion, could not constitute a pattern of racketeering activity. The court noted that the "pattern" requirement was meant to limit RICO "to those cases in which racketeering acts are committed in a manner characterizing the defendant as a person who regularly commits such crimes", and to those cases that present "some indication of a 'threat of continuing activity' by the de-

fendants, not just one instance of fraud with a single victim". 803 F.2d at 324.

A pattern was found missing in *Skycom Corp. v. Telstar Corp.*, 813 F.2d 810 (7th Cir.1987). The plaintiff alleged fraud in the defendant's negotiations to purchase the plaintiff's assets; some of the documents in connection with the fraudulent negotiations were mailed. The predicate acts, the court stated, must be "sufficiently separate in time that they may be viewed as separate transactions". 813 F.2d at 818. The court found *Lipin* controlling, concluding that "supposedly fraudulent representations leading up to a single contract and the transfer of a single business opportunity" did not constitute a pattern. *Id.*

In *Elliott v. Chicago Motor Club Ins.*, 809 F.2d 347 (7th Cir.1987), the plaintiffs claimed that their insurer had fraudulently refused to honor their uninsured motorist personal injury claims, and that the insurer had used the mails in furtherance of that fraudulent refusal. The court held that the RICO claim was properly dismissed for want of a pattern of racketeering activity. Although the mailings had occurred over a period of several years, the mailings "were not distinct ... because they all related to the Elliotts' attempt to settle one claim under their uninsured motorist insurance policy". 809 F.2d at 350. That five family members had been injured, so producing five victims of the scheme, did not save the RICO claims; the victims' injuries were not distinct, because all derived from the defendant's failure to settle their claims arising from one automobile accident and one insurance policy. "Because these predicate acts all clearly relate to the same transaction involving a single insurance policy and arising out of one accident, the acts do not support the continuity aspect of the pattern of racketeering." *Id.*

In *Marks v. Pannell Kerr Forster*, 811 F.2d 1108 (7th Cir.1987), the plaintiff alleged that his accountants defrauded him with respect to his partnership holdings and deprived him of information necessary to file his tax returns. The accountants twice mailed him forms that he contended were fraudulent. Again, the court found *Lipin Enterprises* dispositive of the plaintiff's RICO claim: the complaint demonstrated racketeering acts to defraud one victim on one occasion; the multiple predicate acts occurred within a few short months and did not take on the character of schemes separate and distinct in time and place. "The acts alleged related to a single scheme to defraud a single victim in what appears to be a 'one-shot' effort to inflict a single injury. Such a factual scenario simply fails to satisfy the continuity aspect of racketeering activity required by *Sedima.*" 811 F.2d at 1112.

In *Tellis v. United States Fidelity & Guaranty Co.*, 826 F.2d 477 (7th Cir.1986), *foll'g remand in* — U.S. ——, 107 S.Ct. 3255, 97 L.Ed.2d 755 (1987), the plaintiff had been injured at his place of employment. His employer's insurer offered him a lump sum settlement in exchange for his waiver of worker's compensation benefits. The plaintiff accepted that offer in reliance upon false testimony before the Illinois Industrial Commission that the plaintiff would be allowed to return to work at a "light duty" job. Several mailings were made in furtherance of the effort to induce the plaintiff's acceptance of the offer. The court held that the complaint failed to allege a pattern of racketeering activity because all of the predicate acts related to a single basic transaction, involved a single victim, inflicted a single injury, and occurred over a span of only two months.

### B. Plaintiffs' Arguments

The facts of the case now before the court cannot be aligned squarely with *Lipin Enterprises, Marks,* or *Tellis*. Nonetheless, the court concludes that this case is much closer to those cases than to *Morgan v. Bank of Waukegan* or *Phillips*. The plaintiffs seek to distinguish their case from *Lipin Enterprises* because the defendants' predicate acts involved (1) two distinct transactions (the promissory note sales and bond sales) and (2) several victims (eight note purchasers other than Design Time and Panylrama, and two bond purchasers). The court finds neither distinction persuasive.

The easier question involves the transactions. The sales of the notes was intertwined inextricably with the sale of the bonds. Indeed, one of the plaintiffs' fraud claims with respect to the purchase of the notes is grounded upon an alleged misrepresentation concerning disbursement of the funds raised by the sales of the notes and the bonds. The plaintiffs claim to have relied upon those representations. The sales of the notes and the sales of the bonds were two steps to the same goal, a goal shared by the plaintiffs: raising money for the purchase of equipment for the SDT project. The sales were no more two separate and distinct transactions than were the separate mailings to transfer the stock in *Lipin Enterprises,* or the separate letters concerning the sale of the business opportunity in *Skycom Corp. v. Telstar Corp.,* or the separate letters concerning the attempted settlement of the uninsured motorist claim in *Elliott v. Chicago Motor Club Ins.,* or the separate mailings of the partnership information in *Marks v. Pannell Kerr Forster,* or the mailings and the extortion of the right to worker's compensation benefits in *Tellis.*

As in *Marks* and *Tellis,* the predicate acts occurred within a relatively brief time. The defendants' conduct presents no "indication of a 'threat of continuing activity' by the defendants ..." *Marks v. Pannell Kerr Forster,* 811 F.2d at 1111; *Lipin Enterprises v. Lee,* 803 F.2d at 324. RICO is not directed at "sporadic activity or the isolated offender". *Marks v. Pannell Kerr Forster,* 811 F.2d at 1111. "An isolated episode of fraud does not a pattern make." *Tellis v. United States Fidelity & Guaranty Corp.,* 826 F.2d at 479. The difference between the transactions does not render the defendants' conduct more a "pattern of racketeering activity" than the conduct in *Lipin Enterprises* and the other cited cases.

More compelling is the plaintiffs' argument that the complaint alleges a pattern because the defendants' conduct involved more than a single victim. The cases that seem to present the greatest support to the defendants—*Lipin Enterprises, Marks, Tellis* and *Skycom Corp.*—all involved but a single victim; in two of the three cases, the court placed great importance upon the absence of more than one victim, defrauded once.[6] In *Marshall & Ilsley Trust Co. v. Pate,* 819 F.2d 806 (7th Cir.1987), the court, *en route* to a holding that a RICO plaintiff need not show injury to himself from both predicate acts, noted, "One factor tending to show the existence of a pattern of activity is the presence of multiple victims.... Thus, a plaintiff attempting to prove ... a pattern of racketeering activity may attempt to prove activities directed at a variety of victims." 819 F.2d at 810.

The number of victims, however, is but one of the factors set forth by the *Morgan v. Bank of Waukegan* court for consideration. The holding in *Elliott v. Chicago Motor Club Ins.,* 809 F.2d 347, which involved five victims, demonstrates that the number of victims is not dispositive. The *Morgan* court did not distinguish *Lipin Enterprises* solely due to the number of victims; instead, the court looked to the scope of the scheme, the number and types of injuries, and the time encompassed by the predicate acts. In *Morgan,* those factors led to a finding that a sufficient pattern had been alleged; in this case, they do not.

The complaint of Design Time and Panylrama alleges that other purchasers[7] were

---

**6.** See *Marks v. Pannell Kerr Forster,* 811 F.2d at 1112 ("The acts alleged related to a single scheme to defraud a single victim in what appears to be a 'one-shot' effort to inflict a single injury."); *Lipin Enterprises v. Lee,* 803 F.2d at 324 ("Lipin's complaint alleges racketeering acts all designed to defraud one victim ... Lipin cannot allege that the defendants defrauded another victim ... There must be some indication of a 'threat of continuing activity' by the defendants, not just one instance of fraud with a single victim.").

**7.** The amended complaint alleges that ten entities, including the plaintiffs, purchased the notes. Raffensperger notes that it was among those other purchasers of the notes. The court assumes that the plaintiffs do not contend that Raffensperger defrauded itself. Accordingly, the amended complaint alleges that seven other note purchasers were defrauded by the defendants. The amended complaint does not disclose the number of bond purchasers.

defrauded in the same fashion as the plaintiffs were in the purchases of SDT's notes and the Economic Development Bonds. Setting aside the lack of particularity of that allegation[8] and accepting that allegation as true, as the court must when determining a motion to dismiss, the involvement of additional victims does not transform the defendants' conduct into a pattern. When viewed most favorably to the plaintiffs, the amended complaint alleges a single scheme, in furtherance of which the defendants committed very similar predicate acts during a relatively brief period of time, causing similar injuries to nine or more victims.

### C. Conclusion

In *Morgan v. Bank of Waukegan*, 804 F.2d 970, the court conceded the imprecision of the standard it adopted with respect to RICO's "pattern" requirement:

> We recognize that by adopting this factually-oriented standard, as opposed to a hard and fast set rule, the legal test is necessarily less than precise.... But we reject the claim that such a test necessarily leads to inconsistent results. A test that depends on a case-by-case analysis will necessarily be a bit rough around the edges at first, but as courts begin to apply it to a greater number of factual patterns, its contours should become clearer.

804 F.2d at 977.

The standard set forth in *Morgan v. Bank of Waukegan* is less than a year old; its contours, while clearer now than when *Morgan* was decided, still are not fully defined. Nonetheless, based on the court's reading of *Morgan*, the cases by which it illustrated its holding, and the cases that have followed it within this circuit, the court concludes that the plaintiffs' amended complaint does not allege facts constituting a "pattern of racketeering activity" and, accordingly, states no claim under RICO.

### VI. The Pendent Claims

The parties are not of diverse citizenship; the court's jurisdiction over the remaining state claims would be based on the doctrine of pendent jurisdiction. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Because the federal claims are being dismissed before trial, the court declines, in its discretion, to exercise pendent jurisdiction over the state claims. *Buethe v. Britt Airlines, Inc.*, 749 F.2d 1235 (7th Cir.1984).

### VII. Conclusion and Order

For the foregoing reasons, the defendants' motions to dismiss should be, and hereby are, GRANTED.

SO ORDERED.

---

**8.** See *Haroco, Inc. v. American Nat'l Bank & Trust Co. of Chicago*, 747 F.2d 384, 405 (7th Cir.1984), *aff'd* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985) ("There can be little doubt that Fed.R.Civ.P. 9(b), which requires that allegations of fraud specify 'with particularity' the circumstances of the alleged fraud, applies to fraud allegations in civil RICO complaints."). The allegations of fraud committed on persons other than the plaintiffs seem to be contained entirely within Count III, ¶ 5 of the amended complaint:

> ... the defendants used the mails and made numerous intra and interstate telephone calls to promote the sale of the Notes and Economic Development Revenue Bonds, the proceeds from which were purportedly to be used for the manufacture of synthetic diamond processing equipment. The same or similar false, fraudulent and misleading statements and omissions complained of by these Plaintiffs were made to numerous other individuals....
>
> During the same period of time, the defendants SDT, Raffensperger, Farron and Stscherban were promoting the issuance of an Economic Development Revenue Bond, the proceeds from which were to be used, in part, to finance the construction of diamond manufacturing equipment for SDT. The same type of acts and omissions employed by the defendants to sell the Notes were employed to consummate the issuance of the Bonds....